**RICHARD C. BOCK**
**SUITE 1003, PIONEER PLAZA BUILDING**
**100 NORTH STONE AVENUE**
**TUCSON, AZ  85701**
**(520) 792-4940**
**(520) 792-2139 (FAX)**
**lingemanbock@qwestoffice.net**

**ATTORNEY FOR DEFENDANT LIKENS**

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | NO. CR25-1354-TUC-AMM(MSA) |
| Plaintiff, | **REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE** |
| VS. | |
| Cody Christian Likens, | |
| Defendant. | |

It is expected that excludable delay pursuant to 18 U.S.C. 3161(h)(7)(F) may result from the filing of this motion or an order based thereon.

COMES NOW the defendant, Cody Christian Likens, by and through undersigned counsel and hereby files his reply to the government's response to his motion to suppress evidence.

This motion it's supported by the following memorandum o points and authorities.

### MEMORANDUM OF POINTS AND AUTHORITIES

**I.    FACTS**

The pertinent time line of this case begins with the defendant being stopped by the Oro Valley police on October 3, 2024 at approximately 9:39 p.m.

The defendant was place under arrest at the scene of the stop, Oracle Road and Water Harvest

Road, Oro Valley, Arizona, at approximately 10:00 p.m.

An Oro Valley Police Department removal report authored by officer T. Fletcher of that department documented to a request at 10:03 p.m.

While the defendant's vehicle remained at the scene, a canine was requested to perform a search. The canines participation at the vehicle lasted from 10:04 p.m. to 10:06 p.m. as previously outline in defendant's motion to suppress evidence. That search lacked a positive alert from the canine.

Immediately hereafter, 10:07 p.m., Oro Valley police conducted more intrusive search of the defendant's vehicle. Straps were removed from a secured bench located in the back of the pick-up.

One minute later, the now unsecured bench is opened, searched and the content removed. Those contents are the basis of this fundament.

Attached as Exhibit #1 is a sales receipt from Catalina Towing and Recovery which documents October 4, 2024 at 12:10 a.m. as the date and time the defendant's vehicle was impounded.

The activity of the Oro Valley police in this case has been recorded and preserved by their body worn cameras.

That video will be presented to this Honorable court at the time of this hearing.

**II.    THE LAW**

**A)    THE HOLDING OF *COLORADO V. BERTINE*, 479 U.S. 367 (1987)**

The defendant has argued in his motion to suppress that an on-the-spot inventory will be valid only if department of police permits inventories to be conducted at the point of seizure citing ***Bertine***.

The government's reply was that the defendant had overstated *Bertine's* holding, arguing that the location of the inventory search was not a issue in that case, and "nowhere in Bertine the did the court opine that departmental policy must specify with particularity where an inventory takes place"

It is the defendant's respectful position that the facts of *Bertine* support his argument regarding an on-the-spot inventory.

In *Bertine*, that defendant was arrested for driving under the influence. During that time, a backup officer was called and at the scene inventories the defendant's van in accordance with local police proceedings.

Unlike the facts recited in *Bertine*, police procedures in defendant's case do not reference in support an on-the-spot inventory.

Therefore, it is the defendant's position unlike *Bertine*, Oro Valley police inventory procedures do not authorize an on-the-spot inventory.

### B) THE INVENTORY SEARCH

The defendant would respectfully reargue those arguments advanced under paragraph II section C of his motion to suppress.

In addition, an inventory search should be designed to produce inventory and not allowed so much latitude as to turn it into a purposeful and general means of discovering evidence of a crime.

A review of a Oro Valley Police Officer's body worn cameras justifies the defendant's position that this was nothing more than a general rummaging to discover incriminating evidence.

The law is clear that the inventory search must not be a ruse for a general rummaging to discover incriminating evidence. *United States v. Cervantes*, 703 F. 3d. 1135, 1141 (9th cir.)

### C) THE INEVITABLE DISCOVERY DOCTRINE

The inevitable discovery doctrine is an exception to the exclusionary rule. *United States v. Reilly*, 224 F. 3d. 986, 994 (9th cir. 2000). That doctrine "permits the government to rely on evidence that ultimately would have been discovered absent constitutional violation". *United States v. Ruckes*, 586 F. 3d 713, 718 (9th cir. 2009).

The government bears the burden of proving inevitable discovery by a preponderance of the evidence. *Reilly* at 994.

For the inevitable discovery doctrine to apply in the case of an inventory search: (1) the police must have had legitimate custody of the property to be inventoried, either as a result of a lawful arrest by some other method; and (2) the inventory search must be conducted according to standard agency procedures. *United States v. Mancera-Londono*, 912 F. 2d 373, 375-376 (9th cir. 1990).

The inevitable discovery doctrine would not apply to rehabilitate the evidence seizure without a warrant.

In this case, law enforcement had no reason to believe that the defendant's vehicle contained a weapon.

The inevitable discovery exception applies in circumstances "where based on the historical facts inevitability is demonstrated in such a compelling way that operation of the exclusionary rule is a mechanical and entirely unrealistic bar" *United States v. Boatwright*, 822 F.2d 862, 864 (9th Cir 1987). This case does not meet that standard.

### III.   CONCLUSION

4

The defendant was arrested for a Class One misdemeanor, to-wit driving on a suspended license. This is not a situation in which there was a claim that the defendant was impaired or committed any moving or mechanical violations.

He is searched and the interior of his vehicle is illuminated by law enforcement. No contraband is discovered.

Yet, multiple Oro Valley units are called to the scene of the stop and a canine is employed to determine the presence of drugs which in fact did not result in a positive alert.

Is this proper law enforcement procedure for a claimed suspended license violation?

Immediately after the canine is removed by the handler from the vehicle, Oro Valley Police under the so called guise of an inventory search, rummage through the defendant's pick-up truck, removing straps from a secured bench in the bed of the truck.

This case demonstrates the Oro Valley Police's intention to use the inventory as a ruse to their attempt to find incriminating evidence.

For all the reasons advanced in the defendant's Motion to Suppress and his Reply, it is respectfully requested that this Honorable Court grant his Motion to Suppress.

RESPECTFULLY SUBMITTED this 11th day of September, 2025.

BY /s/ RICHARD C. BOCK

Copy of the foregoing
delivered this date to:

U.S. Attorney